# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 3842 | **DATE** | 9/27/2011 |
| **CASE TITLE** | United States of America vs. $13, 946.00 | | |

**DOCKET ENTRY TEXT**

As such, the Default Decree and Forfeiture Order was entered after Jaime received reasonable and actual notice and therefore his request to vacate that order is denied.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

     On August 17, 2010, this Court entered a Default Decree of Forfeiture in the amount of $13,946. The funds were seized from Ryan Jaime's apartment and pants' pocket as part of a federal search that occurred on October 13, 2009. Four months after the search, on February 23, 2010, Jaime pled guilty to violating one count of the possession with the intent to distribute a controlled substance in violation of 21 U.S.C. § 846 before District Judge Suzanne Conlon, and was subsequently sentenced to 63 months imprisonment. (Case 1:09-cr-00836, Doc. 24.) Subsequent to the criminal matter, the United States filed a complaint seeking forfeiture of the funds pursuant to 21 U.S.C. § 881(a)(6) which this Court granted. Nearly one year later, Jaime now moves the Court to vacate the judgment of default claiming that he did not receive "actual" notice of the forfeiture proceedings. Although Jaime does not state under what rule he is filing, the Court construes it as a claim pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure. Rule 60(b) permits a court to relieve a party from a final judgment for a number of enumerated reasons, including relief from a final judgment if "the judgment is void." Fed.R.Civ.P. 60(b)(4). Rule 60(b) relief is an extraordinary remedy which is granted only in exceptional circumstances. *McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000).

     In his initial one-page motion, Jaime claimed that he did not receive notice of the motion at the Chicago Metropolitan Correctional Center ("MCC Chicago") where he was housed at the time. In its response, the Government provided him with the records that showed that the notice was sent to the MCC Chicago. In response, Jaime stated that he was no longer housed at the MCC Chicago at that time and had been moved to a correctional facility in Terre Haute, Indiana. In reply, the Government agreed that Jaime had in fact been moved, but provided records that showed that Jaime had received notice five days after being moved.

     The records reveal the following: the Government sent notice to Jaime, the only known claimant to the funds, at the Bureau of Prisons at the Chicago Metropolitan Correctional Center by certified mail. (Doc. 15 at ¶ 3; Doc. 15-1; Doc. 15-2.) The certified log book and a supporting affidavit show that on June 24, 2010, the

| STATEMENT |
|---|

certified mailing was received at MCC Chicago. (Doc. 19 at ¶ 3; Doc. 19-1.) Both the Government and Jaime now agree that on that date Jaime was no longer in custody at MCC Chicago and had been transferred to the Federal Correctional Complex in Terre Haute, Indiana ("FCC Terre Haute") on May 20, 2011. (Doc. 19 at ¶ 1.) The certified log book kept at MCC Chicago, as well as the supporting affidavit, also show that MCC Chicago forwarded the mailing to FCC Terre Haute, by certified mail, on the same day it was received. (Doc. 19 at ¶¶ 3-4; Doc. 19-2.) An affidavit from the Correctional System Supervisor at FCC Terre Haute evidences that the forwarded certified mailing was receive for Jaime at FCC Terre Haute on June 29, 2010. (Doc. 19 at ¶ 4; Doc. 19-2.) This affidavit also shows that on that date the certified mailing was delivered to Jaime, as evidenced by his signing for the certified mailing. (Doc. 19 at ¶ 4; Doc. 19-2.)

In addition to sending notice to Jaime, and pursuant to Rule G(4)(a) of the Supplemental Rules for Admiralty and Maritime Claims for Forfeiture Actions, the United States posted notice of the forfeiture action on an official government internet site on June 23, 2010. (Doc. 9 at ¶ 5.) This notice was posted for 30 consecutive days, ending July 22, 2010. The post directed that any claim be filed within 30 days of notice or the last date of publication and any answers be filed within 20 days of the filing of the claim. No claim or answer was filed as of August 12, 2010, and the time for filing such a claim, answer or other responsive pleading had expired. (Doc. 9 at ¶ 5-7.) At that time the Government moved for an entry of default in this Court. (Doc. 9.)

On August 17, 2010, the Court entered the Default Decree of Forfeiture against the funds, finding that the funds were furnished and intended to be furnished in exchange for a controlled substance, were the proceeds from the sale of a controlled substance, and were monies used and intended to be used to facilitate narcotics trafficking, in violation of the Controlled Substances Act. (Doc. 13.) This Court further found that process was duly served and notice adequately published and that the funds were therefore forfeitable to the United States pursuant to 21 U.S.C § 881(a)(6). (Doc. 13.)

Although he claims that he never received notice of the forfeiture of the funds, on October 26, 2010, Jaime filed a Rule 41(g) motion before Judge Conlon for return of the funds. (Case 1:09-cr-00836 Doc. 26.) On December 22, 2010, Judge Conlon denied Jaime's motion, citing to this Court's prior finding that notice to potential claimants had been sufficiently made. (Case 1:09-cr-00836 Doc. 29.) The Government points out, and it is worth noting, that in his motion before Judge Conlon Jaime did not make any mention of his supposed lack of notice of the forfeiture proceedings. It was not until July 26, 2011, when Jaime filed this Motion to Vacate Judgment, that he ever raised the issue of notice. (Doc. 14.)

The federal government is empowered to seek forfeiture of "all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance," in addition to "all proceeds traceable to such an exchange." 21 U.S.C. § 881(a)(6); s*ee also, Lobzun v. United States*, 422 F.3d 503 (7th Cir. 2005). The notice procedures with which the government must comply in a forfeiture action for property valued at $500,000 or less are set forth at 19 U.S.C. §§ 1607-1609. The statute requires the government to do two things. First, the government must send "written notice of the seizure together with information on the applicable procedures...to each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a). Second, the government must also publish notice of the seizure and intent to forfeit the property for at least three weeks in a publication "of general circulation in the judicial district" where the forfeiture proceeding is brought. *Id.* These requirements, though statutory in nature, emanate from the constitutional guarantee that "no person shall...be deprived of life, liberty or property, without due process of law..." U.S. Const. Amend. V. Jaime's attack here is centered on the former requirement insofar as he contends that he did not receive actual notice of the forfeiture proceedings.

In a forfeiture action, however, due process requires the government to make notice that is reasonably

| STATEMENT |
|---|

calculated, under the circumstances, to apprise interested persons of the pendency of the proceedings. *Chairez v. United States*, 355 F.3d 1099, 1101 (7th Cir. 2004) (citing *Dusenbery v. United States*, 534 U.S. 161 (2002)). Due process does not require proof of actual notice. *Id*. Certified mail "has long been considered an acceptable means to provide notice," and courts need not inquire into the details of internal prison mail systems or distribution processes in order to satisfy due process. *Id.* at 1102; *see also, Dusenbery,* 534 U.S. at 169. Furthermore, the Seventh Circuit has declined to impose on the government any kind of affirmative duty to seek out claimants even in situations in which its initial notice is returned undeliverable. *Chairez*, 355 F.3d at 1102. (citing *Garcia v. Meza*, 235 F.3d 287, 291) (7th Cir. 2000)). Instead, in order to ascertain whether the government provided notice that was reasonably calculated to apprise the interested parties of the forfeiture proceeding, the Seventh Circuit requires a case specific inquiry that takes into consideration all the circumstances of an individual case. *Id*.

Although Jaime denies that he received notice, it is clear that the government took all reasonably calculated steps to ensure that notice was made to Jaime. Even though the records presented to the Court show that Jaime received actual notice at the facility in Terre Haute, whether he received the certified letter is immaterial; all that was legally required of the government was a reasonable effort to apprise Jaime of the pendency of the forfeiture action. The United States Attorney sent notice by certified mail to Jaime at MCC Chicago and it was subsequently forwarded to the FCC Terre Haute, within days of the original notice. The Government also posted the notice on the internet. These reasonable steps by the government ensured that notice was tendered and the records reflect that Jaime in fact received actual notice of the forfeiture proceedings. Jaime's own actions within the litigation further reflect his awareness of the proceedings as shown by his motion to seek return of the funds before Judge Conlon.

As such, the Default Decree and Forfeiture Order was entered after Jaime received reasonable and actual notice and therefore his request to vacate that order is denied.